UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SPARX LOGISTICS USA LIMITED, | Civil Action No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| BED BATH & BEYOND, INC., | |
| Defendant, | |

---

Plaintiff Sparx Logistics USA Limited, by its undersigned attorneys, upon personal knowledge except where otherwise stated, alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Sparx Logistics USA Limited ("Plaintiff" or "Sparx") is a corporation organized and existing under the laws of the State of Delaware. Sparx maintains its principal place of business in Charlotte, Mecklenburg County, North Carolina.

2. Upon information and belief, Bed Bath & Beyond, Inc. ("Defendant" or "BBB") is a corporation organized and existing under the laws of the State of New York. Upon information and belief, BBB maintains its principal place of business in Union, Union County, New Jersey.

3. This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

4. Venue is proper pursuant to the parties' agreements.

5. This dispute arises out of two (2) contracts between Sparx and BBB pursuant to which Sparx agreed to transport certain of BBB's goods from China to the United States via two

(2) ocean-going vessels. BBB incurred substantial fees under the contracts based on its delay in first collecting its shipping containers from the port upon arrival, and then again based on its delay in returning empty containers. Now, BBB simply refuses to pay the fees incurred, which total $6,420,580.00.

## FACTUAL ALLEGATIONS

6. Sparx is a freight forwarding company that contracts with shippers to transport containers of goods into the United States.

7. BBB is a retailer of goods across the United States and a household name.

8. On or about June 29, 2021, Sparx (as Carrier) and BBB (as Shipper) executed a Non-Vessel-Owning Common Carrier – Negotiated Rate Agreement pursuant to which Sparx agreed to charter an ocean-going vessel, the ORCA 1, to transport shipping containers carrying BBB's cargo, along with other shippers' cargo, from China to Los Angeles, California and/or Long Beach, California, in accordance with the "Rate and Payment Terms" provided (the "June Agreement").

9. On or about July 22, 2021, Sparx (as Carrier) and BBB (as Shipper) executed a Non-Vessel-Owning Common Carrier – Negotiated Rate Agreement pursuant to which Sparx agreed to charter an ocean-going vessel, the M/V Mekong, to transport additional shipping containers carrying BBB's cargo, along with other shippers' cargo, from China to Los Angeles, California, in accordance with the "Rate and Payment Terms" provided (the "July Agreement").

10. The June Agreement and July Agreement are hereinafter jointly referred to as the "Agreements."

11. Both Agreements provide that they:

> [S]hall be governed by the United States Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998 as codified at 46 U.S.C. § 40101

et seq. and governed by and construed in accordance with the Federal statutory and general maritime laws of the United States to the extent they do not conflict with specific terms herein. To the extent the maritime law of the United States is silent on any given legal issue that may arise under this Agreement reference shall be made to the Laws of the State of North Carolina without reference to conflicts of law provisions. . . All claims and actions hereunder, if not arbitrated, shall be brought solely in the United States District Court for the Southern District of New York located in New York County (Manhattan)[.]"

12. Both Agreements include a "Free Detention" provision: "Upon arrival at destination in the United States, Carrier [Sparx] will give Shipper [BBB] ten (10) calendar days free detention at each discharge port. Shipper will pay a fee of one hundred and fifty dollars $150 USD per day per container thereafter" (the "Detention Provision").

13. Per the terms of the Detention Provision, which is included in both Agreements, if BBB did not return its empty containers not later than ten (10) days from the date of arrival at the port in the United States, it would be charged a fee of $150.00 per container per day.

14. Additionally, in connection with both Agreements, upon arrival at the port in the United States, Sparx advised BBB that the port permitted four (4) days from the date of arrival for the containers to be removed from the port, after which time, the port imposed a fee. For each vessel, Sparx further advised BBB of the last "free day" to collect the containers from the port before the port imposed a fee.

### *The June Agreement – The ORCA 1*

15. The ORCA 1 arrived in the United States on September 24, 2021 at the port of Los Angeles. When the ORCA 1 vessel arrived in the United States, BBB delayed in removing its containers from the port for 96 days, and the port imposed fines based on BBB's delay.

16. Sparx invoiced BBB for the fines imposed by the port based on BBB's failure to timely remove its containers from the port.

17. After removing its containers from the port, BBB delayed for months in returning its empty containers (to a port identified by Sparx pursuant to the Agreement), depriving Sparx of the use and economic benefit of the unavailable containers.

18. Accordingly, as provided by the terms of the Agreement, Sparx imposed charges of $150.00 per container per day that BBB delayed in removing the containers, as outlined in Detention Provision in the June Agreement.

19. Sparx then invoiced BBB per the Agreement for BBB's failure to timely return the empty containers.

20. Sparx performed all its material obligations under the June Agreement.

21. BBB breached the June Agreement by failing and refusing to pay the fees due and owing to Sparx under the Agreement for BBB's failure to timely remove its containers from the port, and subsequent delay in returning those empty containers.

### *The July Agreement – The M/V Mekong*

22. The M/V Mekong arrived in the United States on October 14, 2021 at the port of Los Angeles. When the M/V Mekong vessel arrived in the United States, BBB delayed in removing its containers from the port for 32 days, and the port imposed fines based on BBB's delay.

23. Sparx invoiced BBB for the fines imposed by the port based on BBB's failure to timely remove its containers from the port.

24. After removing its containers from the port, BBB delayed for months in returning its empty containers (to a port identified by Sparx pursuant to the Agreement), depriving Sparx of the use and economic benefit of the unavailable containers.

25. Accordingly, Sparx imposed charges of $150.00 per container per day that BBB delayed in removing the containers, as outlined in the Detention Provision in the July Agreement.

26. Sparx then invoiced BBB per the Agreement for BBB's failure to timely return the empty containers.

27. Sparx performed all its material obligations under the July Agreement.

28. BBB breached the July Agreement by failing and refusing to pay the fees due and owing to Sparx under the Agreement for BBB's failure to timely remove its containers from the port, and subsequent delay in returning those empty containers.

29. The fees incurred by BBB under the Agreements based on its failure and refusal to timely remove its containers from the port, and failure and refusal to timely return its empty contains now total $6,420,580.00.

### *BBB's Decline and Deception*

30. In addition to failing and refusing to pay the fees owed to Sparx, BBB failed and refused to return all of the empty containers on its possession – containers owned by Sparx.

31. BBB improperly retained possession of certain of Sparx's containers, but refused to pay Sparx the charges owed for retaining possession of such containers despite considerable passage of time.

32. BBB converted those containers belonging to Sparx during the time period BBB improperly retained possession.

### FIRST CLAIM FOR RELIEF
### [Breach of Contract – June Agreement]

33. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

34. Sparx and BBB entered into a valid and enforceable contract – the June Agreement – supported by adequate consideration, whereby Sparx agreed to provide certain services and equipment to BBB, and BBB agreed to pay Sparx, as explained in greater detail in the above paragraphs.

35. Sparx performed all its material obligations under the June Agreement.

36. BBB materially breached the June Agreement as set forth above.  Specifically, BBB has failed and refused to pay Sparx those fees incurred based on its failure to timely remove its containers from the port, and subsequent failure to timely return the empty containers.

37. As a direct and proximate result of BBB's breach of contract, Sparx has been damaged in an amount to be proven at trial, but believed to be in excess of $75,000.00, plus interest. Sparx is entitled to recover its damages, plus interest at the legal rate from the date of breach.

## SECOND (ALTERNATIVE) CLAIM FOR RELIEF
### [Unjust Enrichment]

38. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

39. Sparx provided valuable services to BBB, including but not limited to the use of containers owned by Sparx, which BBB knowingly and voluntarily accepted.

40. The services and equipment provided by Sparx were of substantial and measurable value, and Sparx provided such services and equipment to BBB upon a belief that an agreement existed between the parties whereby BBB would perform its obligations under the June Agreement and pay Sparx for its services and equipment.

41. Sparx's services and equipment were not provided as a gift or gratuity, nor were they provided to BBB to discharge any obligation owed to BBB.

42. BBB received the benefit and value of Sparx's services and equipment but failed and refused to fully perform under the June Agreement.

43. BBB has been unjustly enriched at Sparx's expense.

44. A gross inequity would result if BBB is permitted to enjoy the benefits of Sparx's services and equipment despite not performing its obligations under the June Agreement.

45. By virtue of the facts set forth herein, Sparx is entitled to recover from BBB an amount equal to the amount of fees Sparx paid to the port based on BBB's failure to timely remove its containers from the port, plus the amount of damages incurred by Sparx based on BBB's failure to timely return empty containers to Sparx, plus its consequential damages, which are believed to exceed $75,000, plus interest.

## THIRD CLAIM FOR RELIEF
### [Breach of Contract – July Agreement]

46. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

47. Sparx and BBB entered into a valid and enforceable contract – the July Agreement – supported by adequate consideration, whereby Sparx agreed to provide certain services and equipment to BBB, and BBB agreed to pay Sparx, as explained in greater detail in the above paragraphs.

48. Sparx performed all of its material obligations under the July Agreement.

49. BBB materially breached the July Agreement as set forth above. Specifically, BBB has failed and refused to pay Sparx those fees incurred based on its failure to timely remove its containers from the port, and subsequent failure to timely return the empty containers.

50. As a direct and proximate result of BBB's breach of contract, Sparx has been damaged in an amount to be proven at trial, but believed to be in excess of $75,000.00, plus

interest. Sparx is entitled to recover its damages, plus interest at the legal rate from the date of breach.

### FOURTH (ALTERNATIVE) CLAIM FOR RELIEF
### [Unjust Enrichment]

51. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

52. Sparx provided valuable services and equipment to BBB, including but not limited to the use of containers owned by Sparx, which BBB knowingly and voluntarily accepted.

53. The services and equipment provided by Sparx were of substantial and measurable value, and Sparx provided such services and equipment to BBB upon a belief that an agreement existed between the parties whereby BBB would perform its obligations under the June Agreement and pay Sparx for those services and equipment.

54. Sparx's services and equipment were not provided as a gift or gratuity, nor were they provided to BBB to discharge any obligation owed to BBB.

55. BBB received the benefit and value of Sparx's services and equipment but failed and refused to fully perform under the June Agreement.

56. BBB has been unjustly enriched at Sparx's expense.

57. A gross inequity would result if BBB is permitted to enjoy the benefits of Sparx's services and equipment despite not performing its obligations under the July Agreement.

58. By virtue of the facts set forth herein, Sparx is entitled to recover from BBB an amount equal to the amount of fees Sparx paid to the port based on BBB's failure to timely remove its containers from the port, plus the amount of damages incurred by Sparx based on BBB's failure to timely return empty containers to Sparx, plus its consequential damages, which are believed to exceed $75,000, plus interest.

## FIFTH CAUSE OF ACTION
**[Conversion]**

59. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

60. As described in greater detail in the foregoing paragraphs, BBB successfully misappropriated, stole, secreted and converted certain of Sparx's containers, with the intent to deprive Sparx of possession of those containers.

61. BBB's wrongful detention of and refusal to return or to pay for Sparx's shipping containers constituted a claim of dominion and control on BBB's part, and a substantial interference with Sparx's possessory rights to those containers.

62. BBB intended to, and did, wrongfully detain and convert the shipping containers for its own use and financial benefit, thereby preventing Sparx from asserting its right of ownership over the same.

63. BBB converted Sparx's shipping containers wrongfully and without Sparx's consent.

64. BBB's wrongful conversion of Sparx's containers causeddamage and depreciation to Sparx's personal property.

65. As a direct and proximate result of BBB's actions, Sparx has been damaged in an amount to be proven at trial, but which is believed to be in excess of $75,000.00, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court for the following relief:

1. Enter judgment on the claims in Plaintiff's favor;

2. Award Plaintiff compensatory damages, in an amount to be determined at trial, plus prejudgment interest;

3. Award Plaintiff punitive damages;

4. Award Plaintiff its reasonable attorneys' fees, costs and disbursements as a result of this action to the greatest extent provided under the law; and

5. Award such other relief, legal and equitable, which the Court deems just and proper.

Dated: March 17, 2023
      New York, New York

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

By: _____
Anthony J. Viola
Kaitlyn A. Crowe
919 Third Avenue, 38th Floor
New York, New York 10022
(212) 935-3000
ajviola@mintz.com
kacrowe@mintz.com

*Attorneys for*
*Sparx Logistics USA Limited*

502872761v.4